IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CESAR A. VASQUEZ-GUERRERO, <br><br> Defendant. | CRIMINAL No. 17-568 (PG) |

**SENTENCING MEMORANDUM**

TO THE HONORABLE GUSTAVO A. GELPI
CHIEF UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

## I. Introduction

Even though not completely unheard of, it is unlikely that an illegal re-entry defendant who successfully arrived into the United States, and who was working, will present him or herself to the immigration authorities and asked to be deported. That is what Cesar Vasquez-Guerrero (hereinafter "Cesar") did on November 3, 2017. He showed up at the Luis Muñoz Marin International Airport in San Juan and asked to be deported. At the time, Cesar was suffering from a nervous breakdown and was experiencing some psychotic features. He was arrested and charged with being an illegal alien found in the United States. He is scheduled to be sentenced by this Court on July 24, 2018.

Cesar is not a first-time offender. He was convicted almost 10 years ago in Pennsylvania of a narcotics offense. He served 3 years and was deported to the Dominican Republic where he remained for over four years before attempting to come back to the United States. Despite his prior record, which in a different case would call for a guideline

sentence, we are asking the Court to sentence Mr. Vasquez-Guerrero to the time he has already served. In our view, such a sentence is warranted in light of the circumstances of this case, as well as the history of the defendant including his mental health condition. We also submit that the Court should consider applying a downward departure under USSG § 5H1.3.

## II. Procedural Background

Cesar was arrested on November 3, 2017. He has been detained since. On December 21, 2017, that is, about a month and a half after his arrest, Cesar announced that he would be pleading guilty. (Docket No. 17.) He pled guilty on January 16, 2018 by way of straight plea. (Docket No. 19.) A pre-sentence investigation report ("PSR") has been disclosed. (Docket No. 20.) The parties are ready for sentencing.

## III. Discussion

The PSR has calculated a total adjusted offense level ("TOL") of 13 and a Criminal History Category ("CHC") of II. (Docket No. 20.) The sentencing range that these guideline calculations yield is 15 to 21 months of imprisonment. Notwithstanding, for the reasons set for below, Cesar requests a non-guideline sentence of the time he has already served, which is close to nine (9) months.

### *1. History and Characteristics of Cesar*

Cesar is 37 years old and has an eight year old daughter who is a United States citizen and lives in New York; her name is Jazlyn. That is the primary reason Cesar returned to the United States. Of course, he also wanted to work and find better employment opportunities as is usually the case. And he wanted to be close to his relatives since his mother and siblings are all in the United States. He grew up poor in the Dominican Republic and was

2

raised by his grandparents. This is so because his mother moved to Puerto Rico and later to St. Thomas shortly after Cesar was born. Cesar always resented this and felt like he was left behind. It was not until Cesar turned 21 years old that his mother made the arrangements to bring him to the United States legally. His mother Alba resides in North Carolina.

As to education, it is sad to see that Cesar's grandparents did not make sure that he pursue a basic education. He abandoned school in the fourth grade. However, he has skills in construction and carpentry, which is what he was doing in Puerto Rico before he was arrested. He has a history of gainful employment while in the United States. And he is well physically.

His mental health situation is a different story. It is still unclear what happened, but after Hurricane Maria, Cesar began experiencing hallucinations and a terrible paranoia. He had a number of psychotic episodes. Cesar remembers that he was traumatized by the hurricane. He spent the emergency at a very fragile structure that almost collapsed. He was subsequently taken in by some acquaintances. But he was never the same after that. He progressively decompensated to the point where he said: enough! He realized he could not be in Puerto Rico anymore and presented himself at the airport thinking that he would be immediately deported. Shortly after his arrest and detention, Cesar had two more episodes, one on November 5, 2017 and the other on December 16, 2017 as outlined in the PSR. A third episode required that he be hospitalized at the Puerto Rico corrections department's psychiatric unit for stabilization and treatment.

For instance, the medical records show that on December 16, 2017, the chief complaint was "me quieren matar" (they want to kill me). The mental health professional described Cesar as anxious, wordy and illogical, tense, disheveled, hyper vigilant, agitated,

fearful and overly suspicious. Cesar reported at that time that insects where crawling up his legs, and that a voice was telling him that they will cut him into pieces. The initial assessment was anxiety disorder and psychosis. He was immediately administered 40mg of Geodon, an antipsychotic medication. We believe that Cesar was experiencing some of these symptoms at the time he was arrested. His condition improved while receiving ambulatory treatment at the Bayamón institution. However, at MDC he has not received constant treatment and has good and bad days. During the undersigned's last visit, Cesar was again acting agitated and distracted. He had not been given his medication of a week and a half.

Cesar has no history of drug use or alcohol abuse. He has accepted responsibility for his offense as has sworn to remain outside of the United States once deported.

### 2. *Nature and Circumstances of the Offense*

Cesar entered the United States during the month of August 2017 near Aguada. He arrived on board of a yawl and entered the United States without detection. He was in Puerto Rico working for a few weeks before Hurricane Maria devastated Puerto Rico. Shortly thereafter, he could not take it anymore and turned himself in to the immigration authorities believing he would be deported.

This case is a 1326(b)(2) prosecution because Cesar's deportation was subsequent to him sustaining a felony narcotics conviction in 2009. Cesar was sentenced in Pennsylvania to 3 to 6 years. He served the minimum and was removed to the Dominican Republic in 2012. While serious, this prior offense under 35 P.S. § 780-113(a)(30) carries a maximum imprisonment term of 15 years in prison. It has no minimum. In it's conspiracy modality, and under the Pennsylvania sentencing guidelines, it resulted in a range of 3 to 6 years based on the quantity of controlled substances. We proffer that the

4

defendant was a peripheral participant in the conspiracy. Moreover, this prior conviction of over nine (9) years, has already being used twice to increase Cesar's sentencing range. It has enhanced his offense level and it has increased his CHC. Without it, Cesar would face a 0 to 6 month sentencing range. Our request for a time serve sentence involves a term of imprisonment that is over three months more than the higher end of the range without the prior conviction.

### 3. Deterrence, Respect for the Law, Seriousness of the Offense, Punishment

Many studies conclude that certainty rather than severity of punishment is more effective in reducing crime and promoting deterrence and respect for the law. One such study from 2010 concluded the following:

> Existing evidence does not support any significant public safety benefit of the practice of increasing the severity of sentences by imposing longer prison terms. In fact, research findings imply that increasingly lengthy prison terms are counterproductive. Overall, the evidence indicates that the deterrent effect of lengthy prison sentences would not be substantially diminished if punishments were reduced from their current levels. . . .
>
> Based upon the existing evidence, both crime and imprisonment can be simultaneously reduced if policy-makers reconsider their overreliance on severity based policies such as long prison sentences. Instead, an evidence-based approach would entail increasing the certainty of punishment by improving the likelihood that criminal behavior would be detected. Such an approach would also free up resources devoted to incarceration and allow for increased initiatives of prevention and treatment.

Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, THE SENTENCING PROJECT, page 9. (November 2010). Based in part on the above, the length of punishment becomes less effective in advancing these goals of sentencing for a defendant like Cesar who surrendered hoping to be deported, thus

5

defeating the purpose that he had in violating the law in the first place. In other words, whether it is 9, 15 or 21 months, the result is the same. Cesar will do the time and go back to the Dominican Republic having lived an experience that moved him to surrender and ask to be deported. That experience, and the time he has served, is sufficient punishment, promotes respect for the immigration laws, serves to deter him and others.

### *4. Protection of the Public*

The offense was not carried out with violence as stated above. There is no evidence that Cesar has a proclivity or inclination toward violence. Therefore, a long term of imprisonment is not necessary in this case as incapacitation in order to protect the public. The public is not at risk from further crimes by Cesar.

### *5. Education, Medical Treatment and Vocational Training*

Cesar's mental health condition is more effectively treated and managed while he is in the free community. At the BOP he does not have access to the same level of care. Ironically, Cesar received better mental health treatment while detained at Bayamon 705 than what he has received at MDC Guaynabo, which is no treatment at all. This sentencing factor also tips the scales in favor of a lenient sentence.

## IV. Downward Departure

Section 5H1.3 of the United States Sentencing Guidelines provides in relevant part that:

> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.

USSG § 5H1.3. The key language here is "in combination with other offender characteristics." In other words, Cesar has experienced a documented episode of

6

decompensation which in combination with the reasons adduced for having returned illegally to the United States and the reasons for wanting to go back to his country are sufficient for the Court to consider a downward departure. We request a two-level departure which would bring down Cesar's TOL to 11 and his guideline imprisonment range to 10 to 16 months.

## V. Conclusion

In light of all of the above, we ask the Court to sentence Cesar to the time that he has already served which is closed to nine (9) months. Such a sentence is sufficient and not greater than necessary. As the Court knows, even a time-served sentence will entail additional detention until he is formally removed from the United States.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of the above and that Cesar be sentenced to the time he has already served.

**I HEREBY CERTIFY** that on this date I electronically filed the present sentencing memorandum with the Clerk of Court using the CM/ECF system which will sent electronic notification of said filing to all parties of record.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 18th day of July, 2018.

**ERIC ALEXANDER VOS**
**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF PUERTO RICO**

**S/Hector L. Ramos-Vega**
Hector L. Ramos-Vega
First Assistant Federal Public Defender
USDC-PR 222504
241 F.D. Roosevelt Ave.
Hato Rey, P.R. 00918-2441
(787) 281-4922/ Fax (787) 281-4899
E-mail: Hector_Ramos@fd.org